J. B. WILDER & Co. *v.* EDWD. WILDER.

**Trade-marks and Trade-names—Unfair Competition.**

One who, by the style of the bottle used and the label thereon, undertakes to put a medicine on the market by deceiving the public into the belief that they are buying medicine made and sold by another who by much advertising and expenditure of money created a public demand therefor, is guilty of unfair competition.

**Trade-marks and Trade-names—Unfair Competition—Defense.**

One who is seeking to profit by unfair competition, will not be permitted to profit from his own wrong by alleging fraud on the part of the other party, where there is no evidence of fraud on the part of the latter unless it exists in the extravagant statements of the latter as to the curative qualities of his medicine.

APPEAL FROM LOUISVILLE CHANCERY COURT.

February 6, 1873.

OPINION BY JUDGE PRYOR:

After a careful examination of all the evidence bearing upon the issues involved in this case, we have no doubt but what the object of J. B. Wilder's visit to Pittsburg in August, 1867, was to have moulded and made for the firm of J. B. Wilder & Co. bottles for their stomach bitters as nearly similar as possible with the bottles used by Edward Wilder, without having them in every respect identical. The appearance of the bottles connected with the evidence on that subject shows a studied effort to have appellants' bottles and the labels thereon so strikingly similar to those used by the appellee as to deceive and mislead the public. The appellee had expended large sums of money in advertising and making public the virtues of his medicine and seems to have succeeded in inspiring the public with the same confidence in its curative qualities that he himself had. The popularity of his medicine was increasing constantly, owing to his untiring energy in retailing it all over the country by his traveling agents and his lavish expenditure of money for that purpose. The appellants, so far as appears from this record, had never advertised their medicine in a single paper, and were evidently looking to the resemblance between their bottles and medicine and those of Edward Wilder as the only means of its successful introduc-

tion to the public. An ordinary observer might easily be deceived on account of the striking resemblance of the bottles of each and the labels upon them, and in our opinion the evidence is so conclusive on this branch of the case as renders it useless to discuss it. The appellants insist, however, that the manufacture and sale of the medicine by the appellee is a fraud and cheat on the public and therefore a court of equity should deny him any relief, and if an injunction should even be proper, the chancellor has gone too far in the restraint he has placed upon them. There is nothing in the case showing that the medicine possesses any injurious qualities, but on the contrary it appears that it is composed of the best and purest drugs. It is true, men of science in the medical profession indicate by their statements that it is worthless and must necessarily fail to possess the virtues attached to it by the appellee; still if the people are disposed to buy it, upon the extravagant laudation of its medicinal and curing qualities we are inclined to think they should be permitted to exercise this right. The appellee may be acting in good faith when he publicly announces his belief in the many virtues of his medicine and if the public are willing to be humbugged the chancellor will not undertake to prevent it.

The medicine itself is harmless and it does not appear that the public or any individual has been injured by its use. If it was composed of poisonous compounds or of such ingredients as would likely injure those using it, there might be some reason for refusing the relief sought. The appellants, however, not satisfied with using the trade mark of the appellee, a fact mutually admitted by them in their answer, are also conceding for the purposes of the defense a knowledge on their part that the medicine is valueless and an imposition on the public; "that it lives by its success in misleading the public in buying it for virtues it assumes, but has not, when it appears from the proof that they are making the same medicine out of inferior compounds and relying upon the reputation of appellee's medicine, acquired at an expenditure of many thousand dollars, for its sale. There is no evidence of any deception or fraud practiced by the appellee unless it exists in the extravagant statements of the curative qualities of his bitters and, although one must be very credulous to believe in the representation as to the wonderful and many virtues of the medicine, still this court will not presume intentional wrong on the part of the appellee in the ab-

sence of all proof of injury resulting from its use. His own con-fidence in its medicinal qualities is evidence to some extent, at least by his expenditure of thirty-five thousand dollars with no other means of recompense than his success in selling it. Such medicines are only valuable to the extent in which they are appreciated by the public and the appellee, having made his experiment a success by much labor and a large outlay of his means, the appellants should not be allowed to reap the benefit resulting from it, nor will they be allowed under the charge of fraud and deception against the appellee to avoid their own wrong. The attitude in which they place themselves by their defense in this case is not calculated to bring them into favor with the chancellor and his restraining order will not be interfered with by the judgment of this court.

The judgment is *affirmed.*

*Barrett, Robert, Pirtle & Caruth, for appellant.*

*Jas. Speed, Caldwell, W. A. Bullitt, Thos. Speed, for appellee.*